IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GARY ALFORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | CIV-13-1256-HE |
| v. | ) | |
| | ) | |
| TRACY McCOLLUM, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging his convictions entered in the District Court of Pottawatomie County, Case No. CF-2009-527. Respondent has responded to the Petition and filed the relevant state court records, including the preliminary hearing transcript (hereinafter "PH TR __"), trial transcript (hereinafter "TR __") and original record (hereinafter "OR__"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

On November 16, 2009, Petitioner was charged in the District Court of Pottawatomie County, Oklahoma, with the offenses of Unlawful Possession of Controlled Drug with Intent to Distribute (count 1), Possession of Controlled Substance (misdemeanor)(count 2), Driving a Motor Vehicle While Under the Influence of an Intoxicating Substance

1

("DUI")(misdemeanor)(count 3), and Unlawful Possession of Drug Paraphernalia (misdemeanor)(count 4). Petitioner was charged with having committed the felony offense after multiple prior drug-related felony convictions.

Petitioner was arrested on November 6, 2009, and he was released on bond on November 9, 2009. The arresting officer submitted a written affidavit of probable cause in which she averred that she pulled over Petitioner's vehicle after she observed him driving 30 miles per hour in a 65 miles per hour zone and also observed him continue to travel at a low rate of speed with no variation in speed, and that when approaching the vehicle she and another officer smelled an odor of burned marijuana and observed a beer can in the front seat. When Petitioner exited the vehicle, he had an odor of marijuana about his person, he seemed confused and paranoid, and he admitted to having smoked marijuana in a neighboring city. After he was arrested for driving under the influence of drugs, the car was inventoried, and a digital scale and two plastic bags containing marijuana were recovered from the car.

Petitioner filed a Motion for Discovery in the case in which he stated he was appearing "Pro-Se." OR 10, 14. On January 7, 2010, Petitioner filed a pauper's affidavit indicating he had no source of income, was last employed in 2005, and his brother had posted his bond. Petitioner also filed an application for appointed counsel in which he stated he could not afford to hire an attorney. A judge of the district court denied the application and noted that he had attempted to contact Petitioner by phone and learned he was working, and that Petitioner's statement in his application he was not employed was "no longer true." OR 24.

At the preliminary hearing conducted on March 15, 2010, Petitioner appeared without counsel. The presiding judge thoroughly advised Petitioner of his rights to counsel and to self-representation and the risks associated with self-representation. Petitioner indicated in his responses to the court that he wanted to represent himself because he "was there" and he might get a "lazy lawyer" who "would do nothing with it." PH TR 14. Petitioner also stated that he had no funds to hire an attorney, that his brother had provided the funds for his bond, that he was employed and had some income, that he believed he was competent to represent himself at the preliminary hearing, and that he was waiving his right to have a lawyer represent him at the preliminary hearing. PH TR 15-18.

At the conclusion of the preliminary hearing, Petitioner was bound over for trial. OR 29. Petitioner was arraigned on the charges on March 31, 2010, and he was again advised of his rights to counsel, to self-representation, and to court-appointed counsel if he believed he could not afford to retain counsel. Transcript of Not Guilty Plea Proceedings.

Petitioner retained private counsel who entered an appearance in the case on June 3, 2010. OR 33. Several continuances were granted at Petitioner's request. On November 23, 2010, Petitioner filed a motion to dismiss the case as a "Defendant, Pro-Se." OR 41. On December 1, 2010, the court allowed Petitioner's counsel to withdraw and indicated on the court minute that "Defendant [was going] to represent himself." OR 42. In a Notice of Intent to Appeal Court Ruling filed by Petitioner as "Defendant Pro-Se," Petitioner protested that the court should not have allowed his defense attorney to withdraw without ordering the attorney to refund to Petitioner the "attorneys fees paid" to the attorney. OR 43. The trial

3

court denied Petitioner's motion to dismiss and set the case for trial. OR 44.

Petitioner filed another *pro se* motion to dismiss on January 21, 2011. OR 62-63. In this motion, Petitioner states that he was "forc[ed] . . . to retain a lawyer against [his] wishes. Forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself." OR 62. He also alleged that his due process rights under Brady v. Maryland, 373 U.S. 83 (1963), were violated with respect to the DUI charge because the arresting officer "intentionally lost or destroyed" the blood test conducted after his arrest "in bad faith." OR 62.

Prior to the commencement of Petitioner's trial on January 24, 2011, the presiding judge administered an oath to Petitioner and again advised Petitioner of his rights to counsel, to self-representation, and to court-appointed counsel if he could not afford counsel. TR vol. I, 5-23. During the extensive colloquy that followed, Petitioner testified he desired to proceed *pro se* because "I don't think they could do a better job than I would do representing myself." TR vol. I, 12. Petitioner stated that he had retained two attorneys but had fired them or they "quit on me" because they "run you down and take your money." TR vol. I, 15, 16. Petitioner stated that he hired one attorney to represent him only up to the trial. TR vol. I, 16. Petitioner stated that he was employed, owned a ranch, and had received some insurance money. TR vol. I, 17, 18.

Petitioner stated he wanted to represent himself at trial because "I'm the only one that is willing to put on a defense for me. These lawyers . . . don't do nothing." TR vol. I, 17. Petitioner admitted he had not applied for court-appointed counsel after his initial application

4

for court-appointed counsel was denied. TR vol. I, at 18. He stated he did not want to request court-appointed counsel for the purpose of trial because he did not want a "lead attorney." TR vol. I, 18. However, he requested the assistance of an attorney for "answering my questions and telling me how to proceed and everything." TR vol. I, 18-19. The presiding judge advised Petitioner he did not have the right to "a hybrid type of a situation where you can call the shots yourself but then tag team with a lawyer and take turns being in charge." TR vol. I, 20. The judge then indicated "the Court's plan" would be to appoint stand-by counsel for the Petitioner "in case you want to ask the attorney questions." Tr vol. I, 21.

Petitioner stated that his "plan" was to represent himself and have stand-by counsel appointed to provide legal advice to him. TR vol. I, 23. He stated he did not want to have a lawyer appointed to "take over my case." TR vol. I, 23.

Nevertheless, the presiding judge then reviewed Petitioner's initial application for court-appointed counsel and appointed counsel for Petitioner. TR vol. I, 44. The appointed defense counsel subsequently advised the court that before the jury was brought into the courtroom Petitioner had "asked me could he make the opening statement." TR vol. I, 48. When the presiding judge asked Petitioner if he would like to take over his representation for trial, Petitioner stated

> I would like a fair trial, and I think that I don't have a choice because - - you know, other than doing it this way. He don't know nothing. I don't have Discovery or nothing, you know, so it's - - so it's the only way, you know, because he don't know the incident, he don't know how - - we don't have Discovery, we don't - - it's not going to be a fair trial. The law - - the Constitution guarantees me the right to a fair trial and I don't feel like I'm getting a fair trial here.

5

TR vol. I, 49. After more discussion, Petitioner stated that he and the attorney "agreed that since I know more about the case it would be better" if Petitioner represented himself. TR vol. I, 50. Following his waiver, the case proceeded to trial.

The jury returned guilty verdicts for each count. TR vol. II, 28-29. In a second stage, the jury found Petitioner guilty of committing the offense of Possession of Controlled Dangerous Substance with Intent to Distribute after two or more previous felony convictions and recommended a sentence of twenty years of imprisonment and a $10,000.00 fine. TR vol. II, 46. The jury recommended sentences of one year of imprisonment for the three misdemeanor convictions and $1,000.00 fines for two of the misdemeanor offenses. Petitioner was sentenced on March 3, 2011, to the recommended terms of imprisonment and fines.

Petitioner appealed the convictions, alleging as the sole proposition of error that "the magistrate erred in refusing to appoint counsel" for Petitioner prior to the preliminary hearing and the "coercive effect of this error" rendered Petitioner's "subsequent waiver of counsel inadequate as it was not a voluntary waiver." Response, Ex. 1, at 4. The Oklahoma Court of Criminal Appeals ("OCCA") issued a summary opinion in the appeal on May 14, 2012. Response, Ex. 3. The court rejected Petitioner's claim of an involuntary waiver of counsel and found

> that the preliminary hearing magistrate likely did not improperly deny [Petitioner's] request for court-appointed counsel as he admitted that he had some income. However, even if [Petitioner] was entitled to court-appointed counsel at preliminary hearing, the denial of his request was harmless beyond a reasonable doubt as there was no prejudice resulting

6

> from a denial of counsel at this proceeding. *See Norton v. State*, 2002 OK CR 10, 43 P.3d 404. While the status of [Petitioner's] indigency was somewhat unclear at preliminary hearing, it was not at the time of trial. The record strongly indicates [Petitioner] was not indigent at the time of trial. [Petitioner] admitted to the trial court prior to trial that he had a job, owned a ranch and had received some insurance money. Accordingly, the trial court's decision to appoint counsel to represent [Petitioner] at trial based upon an outdated pauper's affidavit and in disregard of strong evidence indicating that [Petitioner] was not indigent did not present [Petitioner] a "Hobson's choice" between representing himself and being represented by unprepared counsel. [Petitioner] was thoroughly and repeatedly advised of the dangers and disadvantages of self-representation. He had the means to hire a lawyer and did so before [he] fired his attorneys and strongly asserted his right to represent himself. He proceeded to trial *pro se* where he was assisted by stand-by counsel to whom he was not entitled. [Petitioner] was not denied his constitutional right to counsel at trial.

Response, Ex. 3, at 2-3 (footnotes omitted).

Petitioner filed an application for post-conviction relief in the trial court on September 4, 2012. Response, Ex. 4. In that application, Petitioner stated that he had been denied his Sixth Amendment right to the effective assistance of appellate counsel because his appellate counsel had not asserted a claim of denial of his Fourth Amendment rights where "the officer stopped his vehicle as a pretext to search for illegal drugs" and there was no justification for the traffic stop. Response, Ex. 4, at 6. The application was denied. Response, Ex. 7.

The OCCA affirmed the district court's decision. Response, Ex. 9. In the OCCA's decision, the OCCA found that Petitioner

> represented himself at trial, assisted by stand-by counsel, despite being thoroughly and repeatedly warned of the dangers and disadvantages of self representation. He now alleges that appellate counsel is somehow responsible for the failure to

7

> challenge the legality of the search of his vehicle pursuant to what he calls a pretextual traffic stop. [Petitioner's] claim that the failure to charge him with the underlying misdemeanor which served as the basis for the traffic stop invalidates the search is without merit. The record in this case is devoid of any indication that appellate counsel's performance was deficient for failing to raise this claim, or that the result in his appeal would have been different but for this omission. We find no error in the district court's ruling.

Response, Ex. 9, at 5.

## II. Petition

In his Petition, Petitioner alleges in ground one, as he did in his direct appeal, that his waiver of trial counsel was involuntary and violated his Sixth Amendment right to the appointment of counsel. Petitioner asserts in ground two, as he did in his post-conviction application, that he was denied effective assistance of appellate counsel because his appellate counsel did not assert a Fourth Amendment claim based on "the unconstitutionality of the traffic stop." Petition, at 6. In ground three, Petitioner asserts he was denied his right to confront an adverse witness because one of the officers present at the traffic stop did not testify at his trial. In ground four, Petitioner asserts there was insufficient evidence presented at his trial to convict him of DUI.

## III. Exhaustion of State Remedies and Anticipatory Procedural Default

In response to the Petition, Respondent asserts that Petitioner failed to exhaust available state remedies with respect to his claims asserted in grounds three and four and that Petitioner's unexhausted claims in grounds three and four should be deemed procedurally defaulted.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court, or demonstrate that there is an absence of available state remedies or that circumstances exist that render the state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1).  See  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)(exhaustion requirement is satisfied when state prisoner has given state courts an opportunity to act on his claims before he presents those claims to federal court in a habeas petition); McCormick v. Kline, 572 F.3d 841, 851 (10th Cir. 2009)(habeas petitioner bears burden of demonstrating exhaustion of available state remedies).

"For a federal court to consider a federal constitutional claim in an application for habeas, the claim must be 'fairly presented to the state courts' in order to give state courts the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Prendergast v. Clements, 699 F.3d 1182, 1184 (10th Cir. 2012)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).   Where a habeas petitioner has not exhausted available state remedies, "[g]enerally a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." Bland v. Sirmons, 459 F.3d 999, 1012 (10th Cir. 2006).

In ground three of the Petition, Petitioner asserts that his rights under the Confrontation Clause of the Sixth Amendment were violated because there was testimony at his preliminary hearing from the arresting officer, Officer Myrko, that a second law enforcement officer, Deputy Florez, was the officer who smelled an odor of marijuana and Deputy Florez did not testify at his trial.  Petitioner states in the Petition that he raised this

9

issue in his post-conviction application.

Petitioner's post-conviction application presented a single Sixth Amendment claim of ineffective assistance of appellate counsel based on appellate counsel's failure to challenge the legality of the initial traffic stop. He alleged that the traffic stop was a "pretext to search for illegal drugs" because he was never charged with or found guilty of a traffic violation.

Petitioner did argue in the application that Officer Myrko testified at the preliminary hearing that Deputy Florez alerted her to the presence of an odor of marijuana at the time of the traffic stop. However, Petitioner asserted only that a Confrontation Clause issue would arise "if such a testimonial statement were considered in regards to any issue concerning the evidence in this case." Response, Ex. 4, at 8. Petitioner did not assert a separate Confrontation Clause claim, and he presented this claim for the first time in his federal habeas Petition.

The claim is procedurally barred although it remains technically unexhausted. If Petitioner attempted to raise this claim in a second post-conviction application, the Oklahoma courts would presumably find it to be procedurally barred under state laws requiring that all claims for relief be raised in an initial post-conviction application, unless the applicant provides sufficient reason for not asserting a claim in a prior application. See Okla. Stat. tit. 22, §§ 1086, 1089(D)(2). Under these circumstances, the issue asserted in ground three is subject to an "anticipatory procedural bar." See Cummings v. Sirmons, 506 F.3d 1211, 1223 (10th Cir. 2007).

The claim may be reviewed on its merits despite the anticipatory application of the

State's procedural bar rule if (1) Petitioner alleges sufficient "cause" for failing to raise the claim in the state courts and resulting prejudice or (2) denying review would result in a fundamental miscarriage of justice because Petitioner has made a "credible"showing of actual innocence. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner has not made the necessary showing of either cause and prejudice or a fundamental miscarriage of justice. Thus, the Court should not consider the merits of Petitioner's procedurally defaulted claim asserted in ground three.

Alternatively, the claim should be denied on its merits notwithstanding Petitioner's failure to satisfy the exhaustion requirement. 28 U.S.C. § 2254(b)(2). The Confrontation Clause of the Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In this case, the arresting officer, Officer Myrko, testified at the preliminary hearing that after she made a "traffic stop" of the vehicle Petitioner was driving she "observed a beer can in the passenger seat and Deputy Florez alerted me to an odor." PH TR 23. She testified that when Petitioner exited his vehicle Petitioner admitted he "had smoked a blunt back in Norman." PH TR 23.

At trial, Officer Myrko testified that she stopped Petitioner for traveling at 30 miles per hour in a 65 mile per hour zone with no variation in speed. TR vol. I, 59-60. She testified she approached the passenger side of the vehicle where she observed a large can of beer and smelled an odor of burnt marijuana coming from the open vehicle. When Petitioner exited the vehicle, she testified she observed Petitioner to have bloodshot eyes, to be very slow in

11

his movements, to be confused, and to have an "odor about his person of marijuana and he was paranoid." TR vol. I, at 61. She admitted that another deputy was present but she did not testify to anything the other deputy said or observed during the traffic stop. She testified that Petitioner admitted he had "smoked a bowl back in Norman." TR vol. I, at 62.

Deputy Florez did not testify at Petitioner's trial, and the prosecution did not attempt to introduce any statements made by Deputy Florez at Petitioner's trial. As no confrontation issue arose at Petitioner's trial, his Sixth Amendment claim in ground three is meritless, and he is not entitled to federal habeas relief concerning this claim.

With respect to the issue Petitioner raises in ground four of the Petition, Petitioner asserts in the Petition that he exhausted state remedies concerning the issue. However, Petitioner did not assert a separate claim of insufficient evidence to support the DUI conviction in either his direct appeal or his post-conviction application.

The claim in ground four is procedurally barred although it remains technically unexhausted. If Petitioner attempted to raise this claim in a second post-conviction application, the Oklahoma courts would presumably find it to be procedurally barred under state laws requiring that all claims for relief be raised in an initial post-conviction application, unless the applicant provides sufficient reason for not asserting a claim in a prior application. See Okla. Stat. tit. 22, §§ 1086, 1089(D)(2). Under these circumstances, the issue is subject to an "anticipatory procedural bar." See Cummings, 506 F.3d at 1223. Petitioner has not made the necessary showing of either cause and prejudice or a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750.

Although Petitioner contends he is actually innocent of the DUI charge, the evidence presented at his trial showed that he was confused, paranoid, moving slowly, had bloodshot eyes, and was unsteady on his feet. Moreover, he admitted he had ingested marijuana, and a toxicologist testified that the blood sample taken from Petitioner after his arrest tested positive for diazepam and marijuana. Because Petitioner has not made a credible showing of actual innocence, the Court should not review the merits of his procedurally defaulted claim asserted in ground four.

Alternatively, despite Petitioner's failure to exhaust available administrative remedies, a rational trier of fact could have found the essential elements of the DUI offense beyond a reasonable doubt based on the evidence presented at Petitioner's trial. See Jackson v. Virginia, 443 U.S. 307, 319 (1979)(for habeas review of a question of sufficiency of the evidence "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson). Accordingly, Petitioner is not entitled to federal habeas relief concerning his claim asserted in ground four.

IV. Standard of Review of Constitutional Claims

With respect to the claims raised in grounds one and two of the Petition, the OCCA reviewed and denied these claims on their merits. Consequently, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard for reviewing the claims.

Under the AEDPA, a federal court cannot grant habeas relief unless the (1) state court

decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). Under this deferential standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010)(internal quotations and citation omitted).

Federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). See Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per*

*curiam*)("[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it.")(citations omitted).

V. <u>Voluntariness of Waiver of Right to Counsel</u>

In ground one, Petitioner asserts that his waiver of his right to counsel at trial was not voluntarily made and that his Sixth Amendment right to counsel was violated. Petitioner asserted this claim in his direct appeal. The OCCA determined that the Petitioner's Sixth Amendment right was not violated based on explicit findings in the decision.

The Sixth Amendment requires that waivers of the right to counsel be made "knowingly and intelligently." <u>Faretta v. California</u>, 422 U.S. 806, 835 (1975)(citations omitted). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." <u>Id.</u> (internal quotation marks and citation omitted).

Petitioner has presented a recitation of "facts" in the Petition, but he has not referenced the state court record to support his "facts." The OCCA's factual findings are presumptively correct, 28 U.S.C. § 2254(e)(1), and Petitioner has not overcome the presumption with clear and convincing evidence.

The OCCA did not unreasonably apply <u>Faretta</u> in determining that Petitioner knowingly and intelligently waived his right to counsel. As the OCCA found, Petitioner "was thoroughly and repeatedly advised of the dangers and disadvantages of self-

representation." Response, Ex. 3, at 2. "He had the means to hire a lawyer and did so before [he] fired his attorneys and strongly asserted his right to represent himself. He proceeded to trial *pro se* where he was assisted by stand-by counsel to whom he was not entitled." Id. at 2-3.

Petitioner's only complaint at the time of his trial was that he had been "forced to go get a lawyer." TR vol. I, 16. He told the presiding judge he was unhappy with the lawyers he retained and wanted to proceed without counsel, although he requested the benefit of stand-by counsel. He clearly stated he did not want to apply for court-appointed counsel to "lead" his defense and his "preference" was to represent himself with stand-by counsel. TR vol. I, 18, 23. He clearly articulated his desire to proceed without counsel after being repeatedly advised of the dangers of self-representation. Petitioner has not demonstrated that the OCCA unreasonably applied governing Supreme Court precedent or made an unreasonable determination of the facts in light of the evidence before the court. Petitioner is therefore not entitled to habeas relief concerning the claim raised in ground one.

VI. Assistance of Appellate Counsel

In ground two, Petitioner contends, as he did in his post-conviction proceeding in the state courts, that he was denied his Sixth Amendment right to effective assistance of appellate counsel. In his state post-conviction proceeding, Petitioner argued that his appellate counsel should have raised a claim that the traffic stop preceding his arrest was an unconstitutional "pretext to search [his vehicle] for illegal drugs." Response, Ex. 4, at 6. The argument was based on the fact that Petitioner was never charged with or found guilty of a traffic violation.

16

The OCCA rejected the ineffective assistance claim, finding that Petitioner's "claim that the failure to charge him with the underlying misdemeanor which served as the basis for the traffic stop invalidates the search is without merit." Response, Ex. 9, at 5. Under the Supreme Court's two-part test which governs claims of ineffective assistance of counsel, a habeas petitioner must demonstrate (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 688, 687 (1984).

"Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id. Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689. Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

In analyzing the effectiveness of appellate counsel based on a claim of failure to raise an issue on appeal, courts "look to the merits of the omitted issue." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)(internal quotation marks and citation omitted). "If the

17

omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance," but if the issue is meritless, "its omission will not constitute deficient performance." Id.

"A traffic stop is justified at its inception 'if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" United States v. Salas, __ F.3d __, 2014 WL 2937037 (10th Cir. 2014)(quoting United States v. Martinez, 512 F.3d 1268, 1272 (10th Cir. 2008)). See Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Petitioner did not challenge the validity of the traffic stop in the trial court, nor did he testify at trial. The only testimony concerning the circumstances of the traffic stop was provided by the arresting officer. Officer Myrko articulated specific facts at Petitioner's trial showing she had probable cause to believe Petitioner had committed a traffic violation. In Oklahoma, "[n]o person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." Okla. Stat. tit. 47, § 11-804(a). According to Officer Myrko's testimony, Petitioner was observed driving 35 miles per hour under the speed limit and he did not pick up speed before she initiated the traffic stop. TR vol. I, 59-60.

Because Petitioner's underlying Fourth Amendment claim was meritless, the OCCA did not unreasonably apply the governing Strickland decision when the court found that Petitioner's appellate counsel did not provide constitutionally ineffective assistance by omitting the Fourth Amendment claim. Therefore, Petitioner is not entitled to habeas relief concerning the issue raised in ground two of the Petition.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by   September 2nd, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   13th   day of   August  , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE